**IN THE UNITED STATES BANKRUPTCY COURT FOR
THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| IN RE:<br><br>RODOLFO RAMIREZ CARRERO and KENDALL ROGGIO VEGA,<br><br>    Debtors. | CASE NO. 22-00458 MAG11<br><br>Chapter 11<br><br>FILED & ENTERED ON 5/27/2022 |

**OPINION AND ORDER**

Pending before the court is the motion for relief from stay filed by OSP Consortium, LLC ("OSP") [Dkt. 54]; the opposition filed by Dr. Rodolfo Ramirez Carrero and Mrs. Kendall Roggio Vega (the "Debtors") [Dkt. 70]; and OSP's reply to Debtors' opposition [Dkt. 90.] OSP moves the court to lift the stay under 11 U.S.C. § 362(d)(1) for "cause" based on a waiver of the automatic stay included in a forbearance agreement signed by Debtors prior to the filing of the instant case. The court held a preliminary hearing on OSP's motion for relief from stay on May 3, 2022 [Dkt. 93]. After hearing the parties' arguments and because the matter before the court is an issue of law, the court took the matter under advisement. For the reasons stated below, OSP's motion for relief from stay [Dkt. 54] is denied.

**I.       JURISDICTION**

This court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a), Local Civil Rule 83K(a), and the General Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of Puerto Rico dated July 19, 1984 (Torruella, C.J.). This is a core proceeding in accordance with 28 U.S.C. § 157(b).

## II. PRE-PETITION FACTUAL BACKGROUND

The origins of Debtors' loans with OSP's predecessor date back to March 2007.[1] [Claims Register 1-1, Part 5.] Upon Debtors' default on the terms of the loan, Debtors and OSP's predecessor executed on August 26, 2014 an agreement titled Agreement of Recognition of Debt, Ratification of Guarantees, Payment Agreement and Judgment by Consent (the "Restructuring Agreement") setting forth the terms and conditions of a workout that would govern their contractual relationship. [Id.]

Debtors defaulted on the terms of this Restructuring Agreement and on December 6, 2017, OSP's predecessor obtained a judgment against Debtors issued by the state court. [Claims Register 1-1, Part 3.] In the judgment, the state court ordered Debtors to pay the following outstanding amounts for their two commercial loans with OSP's predecessor: (i) loan ending in number 9004: the principal amount of $514,700.74 plus interest at a 2% rate that as of November 9, 2017 amounted to $191,077.72, with a $120.71 per diem and $160,000 for attorneys' fees; and (ii) loan ending in number 9005: the principal amount of $779,773.93 plus interest at a 6% rate that as of November 9, 2017 amounted to $27,099.69, with a $132.81 per diem, plus $81,300 for attorneys' fees. [Id.]

On March 12, 2018, the state court issued an order and writ of execution of judgment ordering the public sale of Debtors' properties encumbered in favor of OSP's predecessor. [Id.]

On December 5, 2018, OSP acquired the interest on Debtors' loans. [Claims Register 1-1, Part 4.]

---

[1] Debtors' loans were originally executed with Westernbank Puerto Rico on March 20, 2007. [Claims Register 1-1, Part 5.] When the Federal Deposit Insurance Corporation closed Westernbank Puerto Rico on April 30, 2010, it sold Debtors' loans to Banco Popular de Puerto Rico. [Claims Register 1-1, Part 4.] On June 21, 2016, Banco Popular transferred its interest on the loans to Condado 2, LLC. [Id.] And, on December 5, 2018, Condado 2, LLC transferred its interest on the loans to OSP. [Id.]

On May 1, 2019, Debtors filed their first Chapter 11 bankruptcy petition, which was dismissed on August 6, 2020. [Bankr. Case No. 19-02460, Dkts. 1 & 205.] An order directing Debtors to show cause why the case should not be dismissed for failure to file an amended disclosure statement and plan within the time set by the court was entered on April 15, 2020. [Bankr. Case No. 19-02460, Dkt. 168.] On April 28, 2020, Debtors did not object to the dismissal of the case stating that they were not in a position to file a new disclosure statement and plan because their property was severely damaged in the earthquakes that affected the southern part of Puerto Rico in January 2020 and subsequently, making it impossible for them to comply with the stipulation entered into with OSP. [Bankr. Case No. 19-02460, Dkt. 180.] OSP then requested that the court enter the dismissal with a bar to refiling for 180 days. [Bankr. Case No. 19-02460, Dkt. 190.] An evidentiary hearing was held on June 9, 2020 and an opinion and order was entered on August 6, 2020 dismissing the case and denying the request for the bar to refile. [Bankr. Case No. 19-02460, Dkt. 204.] The court explained that there was no "cause" for the imposition of the bar to re-file by stating that Debtors' determination to not file an amended plan of reorganization was not done in bad faith considering the unprecedented series of circumstances that affected Debtors' property and business [the January 2020 earthquakes and the Covid-19 pandemic] and the difficulty in trying to forecast the medical practice future earnings in light of the ongoing pandemic. [Id.]

On May 7, 2021, Debtors and OSP executed a Stipulation for the Payment of the Foreclosure Judgment (the "Forbearance Agreement"). [Claims Register 1-1, Part 4.] In the Forbearance Agreement, OSP agreed to accept as full payment of their claim the reduced amount of $800,000, plus interest at a rate of 8%. [Id. at ¶ 19.] Debtors also agreed to pay $50,000 upon execution of the agreement, three installments of $5,000 monthly plus interest at a rate of 8%,

and a final balloon payment of $750,000 on or before August 7, 2021. [Id.] The Forbearance

Agreement provided that the repayment term could be extended for an additional three months if

Debtors paid another $25,000 on or before August 7, 2021, then paid another three $5,000

monthly installments plus interest at a rate of 8% and paid the outstanding balance of the

$800,000 debt on or before November 7, 2021. [Id. at ¶ 23.]

The Forbearance Agreement also included the prepetition waiver subject of this dispute

(the "Prepetition Waiver"), which provides the following:

> H. Terms Applicable in the Event of Bankruptcy: As an incentive for OSP to accept this Stipulation; and in recognition of OSP's risks associated the granting and compliance with the terms and conditions of this Stipulation and the rest of the documents pertaining to the Loan; and taking into further consideration the reciprocal terms and conditions contained in this Stipulation and in the rest of the documents pertaining to the Loan; and due to other valuable considerations, including the settlement of all due payments, whose receipt is recognized by the Parties as complying with what it is stated in this Stipulation, the Debtor Party hereby agrees that the provisions detailed hereinbelow will apply under the following circumstances: (i) in the event of bankruptcy, reorganization, insolvency, or any other similar procedure (under the state or federal law) initiated by the Debtor Party or taken against it; or, (ii) if the Debtor Party initiates any legal action or procedure to limit or prevent OSP from exercising its rights to pursue remedies (procedures referred to as *"Reorganization Procedures"*):

> a. Automatic Stay: The Debtor Party hereby acknowledges that, after the notification and the hearing, OSP will have the opportunity to exercise their right to lift and remove immediately and completely any automatic stay implemented on OSP's remedies (including, but not limited to, provisions under Section 362 of Title 11 of the laws of the United States of America, 11 USC, Section 362, amended accordingly) and that the Debtor Party can be protected during the course of any reorganization procedure; be it hereby determined that the Debtor cannot disagree to or question OSP's request for lift of such automatic stay.

> b. Previous Negotiations. Effects of Reorganization Procedures. The Debtor Party acknowledges that extensive and

> bona fide negotiations have taken place with OSP in this Stipulation, and that, during such negotiation, the undersigned parties have considered and analyzed with their respective consultants the implementation of the Reorganization Procedures and their Effects. As result of such negotiations and being duly advised by their legal representatives, who are competent regarding Reorganization Procedures, the Debtor Party has come to the conclusion that implementing any Reorganization Procedure: (i) would cause a decrease in the value of the aforementioned immovable property; (ii) would increase the potential loss of the Debtor Party, OSP, and other creditors of the Debtor Party; (iii) would only delay OSP's rights to pursue legal remedies; and (iv) in case these reorganization procedures were implemented, these would not be of good faith.

[Claims Register 1-1, Part 4 at ¶ 44(h); Dkt. 54, pp. 30-31.]  The bankruptcy attorney for Debtors at the time also signed the Forbearance Agreement. [Claims Register 1-1, Part 4.]

Debtors made the initial $50,000 payment upon execution of the Forbearance Agreement, paid an additional sum of $25,000 in August 2021, and have made the $5,000 monthly installments since June 2020 until now. [Dkt. 70, Exhibit 1.]  As discussed in the May 3, 2022 hearing, Debtors defaulted on the balloon payment due on November 7, 2021 and filed the instant case on February 24, 2022. [Dkt. 1.]

Debtors own six real estate properties: Condominium Sea View Apt AC4 in Cabo Rojo, Puerto Rico (the "Sea View Apartment"); Apartment 36 in Condominium Diplomat, 1126 Ashford Ave. in San Juan, Puerto Rico (the "Diplomat Apartment"), their residence in 64 Calle Dr. Santiago Veve in San German, Puerto Rico (the "Debtors' residence"); a townhouse 4-A in Puerta del Mar Development in Lajas, Puerto Rico (the "Puerta del Mar Townhouse"); and Offices 103 and 104 in San Francisco Plaza, 5 de Diciembre Avenue in Sabana Grande, Puerto Rico (the "Debtors' office). [Amended Schedule A/B, Dkt. 42.]

Banco Popular de Puerto Rico is the first mortgage lienholder encumbering the Sea View Apartment, the Diplomat Apartment, and the Puerta del Mar Townhouse. [Amended Schedule D,

Dkt. 38; Claims Register 6-1, 8-1 & 9-1, respectively.] OSP is the first mortgage lienholder encumbering the Debtors' office and residence. [Amended Schedule D, Dkt. 38.] OSP also has junior liens encumbering the Diplomat Apartment and the Puerta del Mar Townhouse. [Claims Register 1-1, Part 3.]

Moreover, the Internal Revenue Service filed attachment liens on all of Debtors' properties. [Claims Register 4-4; Dkt. 70, ¶ 4.] Also, the Puerto Rico Treasury Department filed attachment liens over Debtors' office and residence. [Dkt. 70, ¶ 4.]

### III.     PROCEDURAL HISTORY OF THE INSTANT CASE

Debtors filed their voluntary petition for relief under subchapter V of chapter 11 on February 24, 2022. [Dkt. 1.]

On March 8, 2022, OSP filed secured proof of claim number 1 in the entire amount of $1,733,602.33. [Claim Register 1-1.] On April 4, 2022, OSP moved the court for relief from the automatic stay. [Dkt. 54.] In its motion, OSP requests the lift of stay as to the following properties: Debtors' office (identified by OSP as properties A & B), the Puerta del Mar Townhouse (identified by OSP as property C), the Diplomat Apartment (identified by OSP as property D) and Debtors' residence (identified by OSP as properties E & F). [Id.]

On April 19, 2022, Debtors filed their proposed plan of reorganization under subchapter V and their opposition to OSP's motion for relief from stay. [Dkts. 69 & 70.]

The court set the hearing on confirmation for June 24, 2022. [Dkt. 84.]

On April 28, 2022, OSP replied to Debtors' opposition to the motion for relief from stay. [Dkt. 90.] On May 3, 2022, the court held a preliminary hearing on OSP's motion for relief from stay and after hearing the parties took the matter under advisement. [Dkt. 93.] OSP stated in

open court that if it does not prevail in its motion for relief from stay, it will elect treatment under 11 U.S.C. § 1111(b)(2).

The court held a status conference hearing on May 6, 2022. [Dkt. 99.] At the status conference, Debtors stated that they will file a feasibility report and an amended plan on or before May 23, 2022 to address different outcomes of pending matters in this case such as OSP electing treatment under §1111(b) or the court denying their objection to the proof of claim filed by the Puerto Rico Treasury Department. [Id.] On May 23, 2022, Debtors requested a three-day extension to file the feasibility report and amended plan, which the court granted. [Dkts. 103 & 107.] On May 26, 2022, Debtors requested a one-day extension to file the feasibility report and amended plan, which was also granted by the court. [Dkts. 109 & 110.] Debtors' feasibility report and amended plan are due on this date, May 27, 2022.

## IV.    APPLICABLE LAW AND DISCUSSION

Upon a debtor's filing of bankruptcy proceedings, 11 U.S.C. § 362(a)(2) automatically stays the enforcement of a judgment obtained prepetition against the debtor or against property of the estate. Here, OSP moves the court under 11 U.S.C. § 362(d)(1) to lift the stay for "cause," namely, the Prepetition Waiver included in the Forbearance Agreement. "Because there is no clear definition of what constitutes 'cause', discretionary relief from the stay must be determined on a case by case basis." Mac Donald v. Mac Donald (In re Mac Donald), 755 F.2d 715, 717 (9th Cir. 1985). "A bankruptcy court has considerable discretion in deciding whether to grant relief from the automatic stay, and its decision should be disturbed only if there is an abuse of discretion." Azevedo v. U.S. Bank N.A., 2018 Bankr. LEXIS 4140, at *7 (B.A.P. 1st Cir. Aug. 29, 2018) (quoting Mercado v. Combined Invs., LLC (In re Mercado), 523 B.R. 755, 761 (B.A.P. 1st Cir. 2015)).

In this case, the Prepetition Waiver is an agreement entered into by Debtors prior to the instant bankruptcy case pursuant to which they agreed to waive the protection of the automatic stay with respect to OSP by not opposing any attempt by such creditor to obtain stay relief in the event of the Debtors' bankruptcy. See, e.g., In re Triple A & R Capital Inv., Inc., 519 B.R. 581, 583-84 (Bankr. D.P.R. 2014) aff'd sub nom. In re Triple A&R Capital Inv. Inc., 2015 U.S. Dist. LEXIS 31430 (D.P.R. Mar. 12, 2015). "Debtors' agreements to stay relief should be examined carefully before a court enforces them." 3 Alan N. Resnick & Henry J. Sommer, Collier on Bankruptcy ¶ 362.07 (16th 2022). "A debtor should not, under normal circumstances, be able to bind its other creditors to its agreement not to contest a creditor's motion for relief from the stay." Id. "An agreement to modify or terminate the automatic stay requires court approval after notice and an opportunity to object is provided to all parties in interest." In re Pease, 195 B.R. 431, 433 (Bankr. D. Neb. 1996).

In general, "[i]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code." Bank of China v. Huang (In re Huang), 275 F.3d 1173, 1177 (9th Cir. 2002). "This prohibition of prepetition waiver has to be the law; otherwise, astute creditors would routinely require their debtors to waive." Id. "To grant a creditor relief from stay simply because the debtor elected to waive the protection afforded the debtor by the automatic stay ignores the fact that it also is designed to protect all creditors and to treat them equally." In re Sky Grp. Int'l, Inc., 108 B.R. 86, 89 (Bankr. W.D. Pa. 1989).

The bankruptcy court in In re Pease relied on the distinction between a pre-bankruptcy debtor and a Chapter 11 debtor in possession when it declined to enforce a prepetition waiver executed because "[a] debtor may not waive the automatic stay of 11 U.S.C. § 362 until after the

bankruptcy case is commenced and the debtor is acting in the capacity as debtor in possession."

195 B.R. at 433. The Pease court explained:

> [B]efore the bankruptcy case is filed, the debtor does not have the capacity to
> waive the rights bestowed by the Bankruptcy Code upon a Chapter 11 debtor in
> possession. Prior to the commencement of the bankruptcy case, the debtor entity
> has the capacity to enter into an agreement binding upon the debtor under
> applicable non-bankruptcy law. Upon the commencement of a Chapter 11
> bankruptcy case, the debtor becomes a "debtor in possession" with a fiduciary
> duty to creditors and rights and obligations under federal law.

> Id. And even in chapter 11, "the debtor in possession may not unilaterally waive the

automatic stay." Id.

Accordingly, some courts have allowed enforcement of prepetition waivers when the

waiver is incorporated and ratified in a bankruptcy proceeding. For example, the Triple A & R

court granted a motion for relief from stay because the debtor, as debtor in possession, had

ratified and agreed in a court-approved cash collateral stipulation to be bound by the terms and

conditions of a forbearance agreement executed prepetition, which contained a waiver of the

automatic stay. In re Triple A & R, 519 B.R. at 586. Likewise, the court in In re A. Hirsch

Realty, LLC found there was cause to lift the stay because of the res judicata effect of a

confirmed chapter 11 plan in a debtor's prior case, which incorporated a prepetition waiver. 583

B.R. 583, 602-604 (Bankr. D. Mass. 2018). See also, In re DB Capital Holdings, LLC, 454 B.R.

804, 816 (Bankr. D. Colo. 2011) ("[W]aivers, unless they were part of a previous bankruptcy

proceeding — for example, part of a confirmed plan or stipulation resolving an earlier motion for

relief - appear to conflict with the policies and purposes of the Bankruptcy Code, and should not

be enforced."); In re Bryan Rd., LLC, 382 B.R. 844, 848 (Bankr. S.D. Fla. 2008) ("As a general

proposition, prepetition waivers of stay relief will be given no particular effect as part of initial

9

loan documents; they will be given the greatest effect if entered into during the course of prior (and subsequently aborted) chapter 11 proceedings.").

The court agrees with much of the rationale of the Pease court for treating unenforceable a prepetition waiver entered outside of a bankruptcy proceeding. However, as "cause" under 11 U.S.C. § 362(d)(1) is not defined and will be determined on a case-by-case basis, the existence of the prepetition waiver must be balanced against other facts including the circumstances surrounding the execution of the Forbearance Agreement. See, In re Krieger, Bankr. LEXIS 3869, at *25 (Bankr. W.D. Mich. Dec. 18, 2019) "[The] fact-specific approach to "cause" under section 362(d)(1) is inconsistent with giving prepetition waivers (or consent) talismanic effect, but also inconsistent with ignoring them." Id.

Turning to the case at bar, Debtors agreed to the Prepetition Waiver as part of the Forbearance Agreement entered into outside of a bankruptcy court proceeding. Case law addressing the scenario before the court—when the prepetition waiver is part of out-of-court workout negotiations—applies a multi-factor approach in considering whether "cause" exists to lift the stay. "[T]he waiver is a primary element to be considered in determining if cause exists for relief from the automatic stay under § 362(d)(1)." In re Powers, 170 B.R. 480, 484 (Bankr. D. Mass. 1994). "Once the pre-petition waiver has been established, the burden is upon the opposing parties to demonstrate that it should not be enforced." Id. "[Prepetition] waivers are neither per se enforceable, nor self-executing." In re Frye, 320 B.R. 786, 790 (Bankr. D. Vt. 2005).

Although "there is no uniform test, courts have considered various factors in determining whether a pre-petition waiver of the automatic stay should be enforced." SummitBridge Nat'l Invs. VI, LLC v. Orchard Hills Baptist Church, Inc. (In re Orchard Hills Baptist Church, Inc.),

608 B.R. 309, 317 (Bankr. N.D. Ga. 2019). In Frye the bankruptcy court enumerated ten factors

to be considered in deciding whether relief from stay should be granted by enforcing a

prepetition waiver:

> (1) the sophistication of the party making the waiver;
> (2) the consideration for the waiver, including the creditor's risk and the length of time the waiver covers;
> (3) whether other parties are affected including unsecured creditors and junior lienholders, and
> (4) the feasibility of the debtor's plan.
> (5) whether there is evidence that the waiver was obtained by coercion, fraud or mutual mistake of material facts;
> (6) whether enforcing the agreement will further the legitimate public policy of encouraging out of court restructurings and settlements;
> (7) whether there appears to be a likelihood of reorganization;
> (8) the extent to which the creditor would be otherwise prejudiced if the waiver is not enforced;
> (9) the proximity in time between the date of the waiver and the date of the bankruptcy filing and whether there was a compelling change in circumstances during that time; and
> (10) whether the debtor has equity in the property and the creditor is otherwise entitled to relief from stay under § 362(d).

320 B.R. at 791. OSP relies on the Frye factors to argue that enforcement of the Prepetition

Waiver is appropriate in this case. [Dkt. 54 & 90.] Debtors disagree. [Dkt. 70.]

This court notes that Frye was a chapter 13 case. But, because other courts have applied

its factors to chapter 11 cases, this court will take them into consideration. See, e.g., In re BGM

Pasadena, LLC, 2016 U.S. Dist. Lexis 72825, (C.D. Cal June 2, 2016). However, the "weight

given to each factor will vary on a case-by-case basis and must be left to the sound discretion of

the court, based upon the equities, facts and circumstances presented." In re Frye, 320 B.R. at

791.

Regarding the sophistication of the parties, Debtors were no stranger to bankruptcy

proceedings, were advised by counsel at the time of the execution of the Forbearance Agreement,

11

and had already settled via a cash collateral stipulation, a motion for the lift of stay filed by OSP in their prior bankruptcy case. [Bankr. Case No. 19-02460, Dkt. 105.]

The consideration for the waiver is an important factor in this analysis. In contemplation of the Forbearance Agreement, OSP put off the execution of the state court judgment for six months, agreed to reduce Debtors' indebtedness from the $1,535,774.66 (as provided for in the state court judgment) to $800,000, and provided Debtors the option to extend the payoff of the discounted amount until November 2021. In exchange, Debtors, in addition to the Prepetition Waiver, agreed to pay the raised interest rate of 8% on both loans and the amounts of $50,000 in May 2021, $25,000 in August 2021, and $5,000 per month since June 2021.[2] However, it is important to note, as stated earlier, that OSP filed a proof of claim for the total amount owed and not the reduced amount included in the Forbearance Agreement. Therefore, in the end, without considering the Prepetition Waiver, in exchange for delaying the foreclosure of Debtors' collateral for six months, OSP received $75,000 plus $5,000 per month starting in June 2021.[3]

Debtors raised in their opposition that the Forbearance Agreement had material and incorrect representations as to their lack of solvency at the time of its execution. Also, Debtors argue that OSP knew that the taxing authorities had filed claims against their properties and consequently knew that Debtors would not be able to sell the properties in order to pay them by November 2021. However, Debtors admitted in open court that they were also aware at the time of signing the Forbearance Agreement that the

---

[2] Under the Restructuring Agreement executed on August 26, 2014 with Banco Popular (OSP's predecessor at the time), Debtors agreed to make 23 monthly payments of $5,241 at the rate of 6% per year, and a final balloon payment of the unpaid principal balance on August 26, 2016. [Dkt. 54, ¶ 2.] Thus, the payments agreed upon by Debtors under the Restructuring and Forbearance Agreements to be made on a monthly basis were substantially similar ($5,241 versus $5,000, respectively).

[3] Even though the term for Debtors to pay off the discounted amount under the Forbearance Agreement expired on November 2021, counsel for Debtors stated in open court that they continue to make monthly payments to OSP for $5,000.

tax liens had been filed.  Therefore, both parties were aware that the representations contained in the Forbearance Agreement were not accurate.

The court also recognizes, as OSP submits, that enforcing the Prepetition Waiver furthers the legitimate public policy of encouraging out-of-court restructuring agreements and settlements. However, the court needs to balance this public policy against another important public policy, namely, a debtor's fresh start. Here, OSP's liens encumber all but one of the properties belonging to Debtors, including their office and residence. Simply stated, if OSP receives the benefit of its bargain and the stay is lifted, Debtors would be left without the possibility of reorganization and a fresh start.

OSP asserts that no other parties are affected if the Prepetition Waiver is enforced because no creditor or party in interest has objected to the request for the lift of stay. OSP adds that allowing it to foreclose the Debtors' properties would benefit Banco Popular, the senior lienholder of two of the properties. However, the Internal Revenue Service and the Puerto Rico Treasury Department have recorded tax liens over the properties. Debtors argue that lifting the stay would rule out reorganization, which is the only way for these junior lienholders to receive distribution on their secured claims. And OSP replies that if the stay is not lifted, it will elect §1111(b) treatment, which will enable OSP to retain its liens under a confirmed plan until payment of its entire secured claim. But at this juncture, OSP has not elected §1111(b) treatment, and the end result of this election, if it were to occur, is speculative. As a result, at this time the court finds that the enforcement of the Prepetition Waiver would prejudice other creditors including the taxing authorities with junior liens over the properties.

As for prejudice to OSP, they argued that the Prepetition Waiver was an essential clause negotiated to be included in the Forbearance Agreement. But, as stated earlier, OSP received substantial payments from Debtors under the terms of the Forbearance Agreement (more than $100,000) and has now filed its secured claim for the outstanding balance due prior to the execution of the Forbearance Agreement. [Claims Register 1-1.]  The court also notes that even if the Prepetition waiver is not enforced, OSP, as the largest secured creditor in this case, has strong tools within subchapter V to protect and collect its claims. In any event, the Prepetition Waiver could not be and was not self-executing, therefore the filing of a motion to relief from stay was required for the stay to be lifted.  The hearing on confirmation of this plan is scheduled for June 24, that is, one month from now.  If the Prepetition waiver were enforced today OSP would be gaining less than one month within the bankruptcy and would need to go back to the state courts to request a public sale date which would be scheduled a few months from now.  At this time the delay that the Prepetition Waiver was intended to mitigate will be brief by way of confirmation of the plan or, in the alternative, dismissal.

There is substantial proximity between the Forbearance Agreement date (May 7, 2021) and the bankruptcy filing date (February 24, 2022). However, the Forbearance Agreement was due to expire within 6 months when Debtors were to pay the reduced full amount owed.  Debtors complied with the payment scheduled as agreed and paid more than $100,000 but were not able to pay the full balance at the end of the six months because they could not sell the real properties that would fund the full payment. The time between the two dates was brief but so was the forbearance period.  Six months to sell real properties of that value, in pandemic times, in Southern Puerto Rico, recently affected by numerous earthquakes was overly ambitious especially considering all encumbrances on the properties.  Both OSP and Debtors must have

14

been aware of this fact, therefore a subsequent bankruptcy filing was a real probability.

Furthermore, in these extraordinary times we live in, we can all agree that in the last year we

have seen substantial change in circumstances.  Puerto Rico is no longer under strict Covid-19

related lockdowns, which together with the year 2020 earthquakes, affected Debtors' operational

income and precluded them from filing a reorganization plan in their first bankruptcy case as

concluded by the bankruptcy court then.  [Bankr. Case No. 19-02460, Dkt. 204.]  At this time,

May 2022, the pandemic is in general under control, the earthquakes have greatly diminished,

and we have adjusted to our new normal.

There are two Frye factors which the court cannot properly analyze at this time. In the

first place is Debtors' equity in the property. OSP argues that per Debtors' own proposed value

of OSP's secured portion when juxtaposed to its claim, leaves them undersecured in the amount

of $936,102.33 ($1,733,602.33 of the secured claim as filed minus $797,500 of the value

assigned to the properties). In turn, Debtors argued at the hearing that some of their properties

have equity and that they will use them to fund their plan. Nevertheless, an analysis of the value

of each property in relation to the liens encumbering them is required to determine equity.

Neither party presented appraisals of all the properties, title search reports, or evidence of the

balance due for each loan.

Secondly, the feasibility of Debtors' proposed plan or whether there appears to be a

likelihood of reorganization may not be assessed at this time. Debtors have stated that they will

be filing on May 27, 2022, a feasibility report and amending their plan to address different

outcomes of pending matters in this case such as OSP electing treatment under §1111(b) or the

court denying their objection to the proof of claim filed by the Puerto Rico Treasury Department.

[Dkt. 99.]  Simply put, the court cannot evaluate the feasibility of a plan that had not been filed at the time of the May 3 hearing.

In conclusion, the court will not enforce the Prepetition Waiver after careful analysis of the Frye factors. The court finds that excluding the Prepetition Waiver, OSP received adequate consideration in the Forbearance Agreement, other creditors will be adversely affected by the enforcement of the waiver and OSP will not be substantially prejudiced if the waiver is not enforced.  The public policy encouraging out of court restructurings and settlements needs to be balanced against the public policy of Debtors' right to seek the protection afforded by the Bankruptcy Code.  Furthermore, although there was less than one year between the date of the Prepetition Waiver and the date of the bankruptcy filing, the forbearance agreed to expired within six months (three months before the bankruptcy filing) and there was a significant change in circumstances in that time.

Most importantly, the court declines to enforce the Prepetition Waiver in this case because the fact that OSP has liens on all the properties except for one, including the Debtors' office and residence, makes the Prepetition Waiver, in essence, equivalent to a prohibition for Debtors to file bankruptcy. "[P]repetition agreements purporting to interfere with a debtors' rights under the Bankruptcy Code are not enforceable." In re Intervention Energy Holdings, LLC, 553 B.R. 258, 263 (Bankr. D. Del. 2016) (quoting MBNA Am. Bank, N.A. v. Trans World Airlines, Inc. (In re Trans World Airlines, Inc.), 275 B.R. 712, 723 (Bankr. D. Del. 2002)). "[S]ince bankruptcy is designed to produce a system of reorganization and distribution different from what would obtain under nonbankruptcy law, it would defeat the purpose of the Code to allow parties to provide by contract that the provisions of the Code should not apply." Bank of Am. v. N. LaSalle St. Ltd. P'ship (In re 203 N. Lasalle St. Pshp.), 246 B.R. 325, 331 (Bankr.

16

N.D. Ill. 2000). "As a practical matter, there may be little significant distinction between the enforcement of a pre-petition waiver of the automatic stay in a single asset case and the enforcement of a provision prohibiting the filing of a bankruptcy case in the first place." In re Jenkins Court Assocs. Ltd. P'ship, 181 B.R. 33, 37 (Bankr. E.D. Pa. 1995). Although this is not a single asset case, the fact is that OSP seeks to foreclose on all the properties of the Debtors including their residence and their office, except for one which is fully encumbered. Thus, the reasoning is analogous to the case before us. The court agrees and adopts the observations of the Jenkins court which stated:

> Here—as in many "single asset cases," enforcement of the Debtor's pre-petition waiver of the protection of the automatic stay could quickly foretell the end of the Debtor's case. If the Debtor's single asset, i.e. the Project, passes from the bankruptcy estate through foreclosure, the Debtor, it can easily be seen, will have no realistic opportunity to attempt to formulate a repayment or reorganization plan. In the absence of a complete evidentiary hearing—wherein other grounds for modifying the stay are established, the Court believes that enforcement of the pre-petition waiver of the automatic stay in this instance too closely approximates the more reviled prohibition against filing for bankruptcy protection.

Id. And, as stated, "[i]t is against public policy for a debtor to waive the prepetition protection of the Bankruptcy Code." Huang, 275 F.3d at 1177.

###### V.     CONCLUSION

Based on the foregoing, the court denies the motion for relief from stay under 11 U.S.C. §362(d)(1) [Dkt. 54] filed by OSP Consortium LLC.

IT IS SO ORDERED.

In Ponce, Puerto Rico, this 27th day of May 2022.

María de los Ángeles González
United States Bankruptcy Judge

17